# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CYNTHIA SUMMERS AND KIMBERLY WASHINGTON,**   **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  23-1777** |
| **FCA US LLC, F/K/A CHRYSLER LLC AND CHRYSLER GROUP LLC,**   **Defendant** | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is a motion for final summary judgment (the "Motion for Summary Judgment") filed by Defendant FCA US LLC ("FCA").[1] Plaintiffs Dirk Summers[2] and Kimberly Washington filed an opposition.[3] FCA filed a reply.[4]

## BACKGROUND

On or about April 29, 2022, Danielle Summers was a passenger in a 2007 Chrysler Town & Country Extended Van (the "Chrysler Van"), driven by Plaintiff Kimberly Washington, when the Chrysler Van was struck on the passenger side by another motorist.[5] Plaintiffs allege that, "[a]s a result of the impact, the [Chrysler Van] spun and flipped one and a half times."[6] Plaintiffs claim the impact caused Danielle Summers "to

---

[1] R. Doc. 53. FCA US LLC is formerly known as Chrysler LLC, which is formerly known as Chrysler Group LLC.

[2] On July 30, 2024, the Court granted Dirk Summers' motion to substitute as a party plaintiff for his deceased mother, Cynthia Summers. R. Doc. 61.

[3] R. Doc. 62.

[4] R. Doc. 65.

[5] R. Doc. 2-1 at p. 5. The parties agree there is no genuine issue as to this material fact. *See* 53-2 at ¶ 2 (citing R. Doc. 2-1 at pp. 5-6); R. Doc. 67 at ¶ 2.

[6] R. Doc. 2-1 at p. 6. The parties agree there is no genuine issue as to the fact that "[t]he impact caused the [Chrysler Van] to leave the roadway and overturn." R. Doc. 53-2 at ¶ 3 (citing R. Doc. 2-1 at pp. 5-6); R. Doc. 67 at ¶ 3.

be ejected" from the Chrysler Van and to sustain "severe[] injuries, which [] ultimately resulted in her death," and caused Plaintiff Washington "to be partially ejected" from the vehicle and to sustain non-fatal personal injuries.[7]

On April 20, 2023, Plaintiffs Kimberly Washington and Cynthia Summers, the mother of decedent Danielle Summers, filed suit in the 29th Judicial District Court for the Parish of St. Charles against Defendant FCA, the alleged manufacturer of the Chrysler Van.[8] In their state court petition, Plaintiffs assert claims under the Louisiana Products Liability Act ("LPLA") for manufacturing defect, design defect, inadequate warning, nonconformity to express and implied warranty, and negligence.[9] Plaintiffs' state court petition alleges only one characteristic of the Chrysler Van was defective and unreasonably dangerous—the vehicle's front and rear side windows were equipped with tempered glass instead of laminated glass (the "Glass Defect").[10]

FCA timely removed the action to the Eastern District of Louisiana on May 26, 2023.[11] While proceeding before this Court, Plaintiffs engaged Stephen Batzer, Ph.D., represented to be an expert in forensic engineering, "to provide an engineering analysis regarding [the Chrysler Van] rollover collision severity, the design of [the vehicle's] side

---

[7] R. Doc. 2-1 at pp. 5-6. The parties agree that Plaintiffs claim "Danielle Summers was ejected from the [Chrysler Van] and sustained fatal injuries," and that Plaintiff Washington "was also injured in the crash." R. Doc. 53-2 at ¶ 4 (citing R. Doc. 2-1 at pp. 5-6); R. Doc. 67 at ¶ 4.

[8] R. Doc. 2-1 at p. 5. Although the parties agree that the Plaintiffs "filed the present lawsuit in the 28th Judicial District Court, Parish of St. Charles, Louisiana" on "April 27, 2023," the state court pleadings attached to FCA's notice of removal indicate Plaintiffs filed suit in the 29th Judicial District Court on April 20, 2023. *See* R. Doc. 53-2 at ¶ 7 (citing R. Doc. 2-1 at p. 5); R. Doc. 67 at ¶ 7; R. Doc. 2-1 at p. 5.

[9] R. Doc. 2-1 at pp. 7-8. The parties agree "Plaintiffs assert product liability claims against FCA [] under the LPLA for manufacturing defect, design defect, inadequate warning, failure to conform to express and implied warranty, and negligence." *See* R. Doc. 53-2 at ¶ 9 (citing R. Doc. 2-1 at pp. 7-8); R. Doc. 67 at ¶ 9.

[10] R. Doc. 2-1 at pp. 7-8 (allegations re defective glass in Plaintiffs' state court petition).

[11] Notice of Removal, R. Doc. 2. The parties agree FCA timely removed the action to this Court. *See* R. Doc. 53-2 at ¶ 8 (citing R. Doc. 2); R. Doc. 67 at ¶ 8.

windows," "and to discuss alternatives that [FCA] could have implemented."[12] In his forensic engineering report dated January 5, 2024 (the "Batzer Report"), Dr. Batzer expressed several opinions related to the Glass Defect, including his opinions that the Chrysler Van "was not equipped with occupant retention side glazing at any position and all side windows failed."[13] For the first time in this case, the Batzer Report raised an additional defect theory premised on the fact that the Chrysler Van "was not equipped with rollover activated side curtain airbags" (the "Airbag Defect").[14]

After receiving the Batzer Report, FCA moved the Court to preclude Plaintiffs from asserting LPLA claims related to the Airbag Defect (the "Motion to Preclude"), arguing Plaintiffs' "new defect theory" "prejudices the ability of FCA to retain and identify experts in a timely manner and to produce documents and exhibits to support its defense."[15] On February 16, 2024, the Court held a status conference at which the parties agreed to continue deadlines to allow for additional discovery related to the alleged Airbag Defect and the Court denied as moot FCA's Motion to Preclude.[16] The parties now agree Plaintiffs assert claims under the LPLA based on two allegedly unreasonably dangerous characteristics of the Chrysler Van—(1) the Glass Defect and (2) the Airbag Defect.[17]

The operative scheduling order required the parties to file dispositive motions by

---

[12] Forensic Engineering Report of Stephen A. Batzer, Ph.D. [hereinafter Bazter Rep.], R. Doc. 53-4 at p. 3.
[13] *Id.* at p. 18.
[14] *Id.*
[15] R. Doc. 37 at pp. 7-8.
[16] R. Doc. 43.
[17] The parties agree that "Plaintiffs criticize (1) the use of tempered glass as opposed to laminated glass in the front and rear side windows and (2) that the [Chrysler Van] was not equipped with a rollover deployable side airbag curtain." *See* R. Doc. 53-2 at ¶ 6 (Batzer Rep., R. Doc. 53-4 at p. 18); R. Doc. 67 at ¶ 6. The parties also agree "[t]his case involves an allegedly defective 2007 Chrysler Town & Country Extended Van" and that Plaintiffs allege "their injuries were caused by the defective and unreasonably dangerous [Chrysler Van]." *See* R. Doc. 53-2 at ¶¶ 1, 5 (citing R. Doc. 2-1 at pp. 5-7); R. Doc. 67 at ¶¶ 1, 5.

July 16, 2024.[18] FCA timely filed its Motion for Summary Judgment, arguing the Plaintiffs have failed to present sufficient evidence to create genuine issues of material fact as to their LPLA claims related to the alleged Glass and Airbag Defects in the Chrysler Van.[19]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] "An issue is material if its resolution could affect the outcome of the action."[21] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[22] All reasonable inferences are drawn in favor of the nonmoving party.[23] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[24]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[25] If the moving party fails to carry this burden, the motion must be denied. If the moving party

---

[18] R. Doc. 46.
[19] R. Doc. 53.
[20] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[21] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[22] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[23] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[24] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[25] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[26]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[27] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[28] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by

---

[26] *Celotex*, 477 U.S. at 322−24.

[27] *Id.* at 331−32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322−24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. and Pro. §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[28] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288−89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249−50 (1986).

the moving party."[29] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[30] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[31] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[32]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[33]

## LAW AND ANALYSIS

The LPLA establishes the "exclusive theories of liability for manufacturers for

---

[29] *Celotex*, 477 U.S. at 332–33.
[30] *Id.*
[31] *Id.* at 332–33, 333 n.3.
[32] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[33] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

damage caused by their products."[34] "Under any theory of defect, a plaintiff must establish, as an essential element of his or her case, that the damage was 'proximately caused by a characteristic of the product that renders the product unreasonably dangerous' and, further, that such a characteristic existed at the time the product left the control of its manufacturer."[35] Thus, "the claimant in an LPLA products liability claim has the burden of proving"[36] the following elements:

> (1) that the defendant is a manufacturer of the product;
> (2) that the claimant's damage was proximately caused by a characteristic of the product;
> (3) that this characteristic made the product 'unreasonably dangerous'; and
> (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[37]

A product may be "unreasonably dangerous" within the meaning of the statute in one of four ways: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty.[38] "Whether a product is unreasonably dangerous, and thereby is defective, is a question of fact to be made by the factfinder."[39]

In this case, the Plaintiffs allege their injuries were proximately caused by two characteristics of the Chrysler Van—the Glass Defect and the Airbag Defect. The Plaintiffs allege the two defects were unreasonably dangerous as defined by the LPLA in all four ways—because of manufacturing defect, design defect, inadequate warning, and

---

[34] La. R.S. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco, Co.*, 52 F.3d 524, 526 (5th Cir. 1995).

[35] *Underwood v. General Motors LLC*, 14-188, 2015 WL 5475610, at *2 (quoting La. R.S. §§ 9:2800.54(A), 9:2800.54(C)).

[36] *Caboni v. General Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005).

[37] *Jack v. Alberto-Culver USA, Inc.*, 949 So. 2d 1256, 1258 (La. 2007) (citing La. R.S. § 9:280054(A)).

[38] *Battistella v. Daimler Chrysler Motors, Co.*, 03-2286, 2004 WL 1336444, at *1 n.1 (E.D. La. June 14, 2004).

[39] *Hines v. Remington Arms Co.*, 94-455 at 6 (La. 12/8/94) 648 So. 2d 331, 335.

nonconformity to an express warranty.[40] In its Motion for Summary Judgment, Defendant FCA does not dispute the first and fourth elements of Plaintiffs' LPLA claims are satisfied—that FCA was a manufacturer of the Chrysler Van and that the Plaintiffs' alleged injuries arose from a reasonably anticipated use of the product. Instead, FCA argues Plaintiffs have not met their burden to establish any genuine disputes of material fact with respect to the second and third elements of the Plaintiffs' LPLA claims—that the alleged Glass and Airbag Defects made the Chrysler Van unreasonably dangerous and that the Plaintiffs' injuries were proximately caused by those unreasonably dangerous characteristics of the vehicle.[41]

**I.    FCA is entitled to summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous due to nonconformity with an implied warranty, as well as Plaintiffs' negligence claims against FCA.**

Defendant FCA moves for summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous due to nonconformity with an implied warranty and Plaintiffs' negligence claims against FCA,[42] arguing those causes of action "are barred by the LPLA," which "'establishes the exclusive theories of liability for manufacturers for damage caused by their products.'"[43] In opposition, Plaintiffs only restate the general allegations from their petition that FCA was negligent and that the Chrysler Van was unreasonably dangerous under the LPLA because it "failed to conform to [] implied warranty."[44]

---

[40] *See* R. Doc. 53-2 at ¶¶ 6, 9 (citing Batzer Rep., R. Doc. 53-4 at p. 18; R. Doc. 2-1 at pp. 7-8); R. Doc. 67 at ¶¶ 6, 9.
[41] R. Doc. 53-1 at p. 10.
[42] *See* R. Doc. 53.
[43] R. Doc. 65 at p. 10 (quoting La. R.S. § 9:2800.52).
[44] *See* R. Doc. 62 at p. 9.

The LPLA took effect on September 1, 1988, and applies to causes of action that accrued on or after that date.[45] As discussed, the LPLA establishes the "exclusive theories of liability for manufacturers for damage caused by their products."[46] The LPLA does not establish causes of action for negligence or failure to conform to an implied warranty.[47] Because Plaintiffs' allegations of negligence and nonconformity to an implied warranty fail to state a claim against FCA under the LPLA, FCA is entitled to summary judgment on those claims.[48]

## II. FCA is entitled to summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due to a manufacturing defect.

Under the LPLA, a product is unreasonably dangerous due to a defect in "construction or composition" (i.e., a "manufacturing defect") if, "at the time the product left the manufacturer's control, 'the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.'"[49] Louisiana Revised Statutes § 9:2800.55 requires a plaintiff to "prove that a product 'is defective due to a mistake in the manufacturing process.'"[50] Indeed, "[t]he focus of the inquiry on a

---

[45] *See Brown*, 52 F.3d 524.

[46] La. R.S. § 9:2800.52 ("A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory not set forth in the LPLA."); *Brown*, 52 F.3d at 526.

[47] A manufacturer may only be liable for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous, and a product is "unreasonably dangerous" within the meaning of the LPLA in one of four ways: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty. *See* La. R.S. §§ 9:2800.55-58; *Battistella*, 2004 WL 1336444, at *1 n.1.

[48] *See Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997); *Bruno v. Biomet, Inc.*, 20-2706, 2022 WL 2564240, at *2 (E.D. La. June 23, 2022).

[49] *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (quoting La. R.S. § 9:2800.55).

[50] *Abrogast v. Timex Corp.*, 05-2076, 2010 WL 148288, at *5 (W.D. La. Jan. 12, 2010) (quoting *Stahl*, 283 F.3d at 263).

manufacturing defect claim 'is the specific product that was in hand at the time of use, as opposed to the product in general.'"[51] "Because LPLA liability for a [manufacturing] defect" "is strict liability, the plaintiff need not show that the manufacturer knew or should have known of the product deviation and could have prevented it, *i.e.*, negligence."[52] However, "a plaintiff 'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it unreasonably dangerous.'"[53] "The defect under Section 9:2800.55 may be established by circumstantial evidence."[54]

FCA moves for summary judgment on Plaintiffs' manufacturing defect claims,[55] arguing the "one sentence allegation[]" in Plaintiffs' petition claiming the Chrysler Van was unreasonably dangerous due to a manufacturing defect is insufficient to survive summary judgment because "Plaintiffs have neither shown a specification that was not complied with nor have they provided any evidence that any [manufacturing] defect proximately caused Plaintiffs' injuries."[56] In opposition, Plaintiffs do not point to evidence of the "manufacturer's specifications or performance standards" for the Chrysler Van,[57] much less any evidence that raises a genuine dispute that FCA materially deviated from a

---

[51] *Weams v. FCA US L.L.C.*, 17-4, 2019 WL 960159, at *20 (M.D. La. Feb. 27, 2019) (quoting *Allgood v. GlaxoSmithKline PLC*, 06-3506, 2008 WL 483574, at *7 (E.D. La. Feb. 20, 2008), *aff'd sub nom. Allgood v. SmithKline Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009)).
[52] *Roman v. Western Mfg.*, 691 F.3d 686, 697 (5th Cir. 2012) (citations and internal punctuation omitted).
[53] *Moore v. BASF Corp.*, 11-1001, 2012 WL 6025917, at *3 (E.D. La. Dec. 4, 2012) (quoting *Welch v. Technotrim, Inc.*, 778 So. 2d 728, 733 (La. App. 2 Cir. 2001)).
[54] *Roman*, 691 F.3d at 698 (citations omitted).
[55] R. Doc. 53.
[56] R. Doc. 65 at p. 10 (citing La. R.S. § 9:2800.55).
[57] *See Moore*, 2012 WL 6025917, at *3.

specification or performance standard for the product or "from otherwise identical products manufactured by [FCA]," as required by the LPLA.[58] Instead, Plaintiffs only restate the general allegations from their petition that the Chrysler Van was "unreasonably dangerous in construction and/or composition."[59]

The Court finds the Plaintiffs have not "identif[ied] specific evidence in the record" of the manufacturer's specifications or performance standards, nor have they identified evidence that the Chrysler Van deviated from any particular specification or standard, both of which are necessary to prove the product was unreasonably dangerous due to a manufacturing defect.[60] Because Plaintiffs rely only on "unsubstantiated assertions," instead of identifying evidence in the record that raises a genuine dispute as to the material facts necessary to prove their manufacturing defect claims, FCA is entitled to summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due to a manufacturing defect.[61]

### III. FCA is entitled to summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due to its nonconformity with an express warranty.

Under the LPLA, "[a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue."[62] The LPLA defines "'express warranty' as a representation, statement of alleged

---

[58] La. R.S. § 9:2800.55.
[59] *See* R. Doc. 62 at p. 9.
[60] *See Rogas*, 136 F.3d at 458.
[61] *See id.*
[62] La. R.S. 9:2800.58.

fact or a promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance."[63] The Louisiana Supreme Court has emphasized "[t]he LPLA makes it *very* clear that in order of the manufacturer to be liable, there must be a specified stated warranty, *i.e.*, *express*."[64]

FCA moves for summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous due to its nonconformity with an express warranty.[65] In opposition, Plaintiffs do not point to evidence of an express warranty made by FCA, much less any evidence that raises a genuine dispute that the Chrysler Van did not conform with a particular express warranty.[66] Instead, Plaintiffs only restate the general allegations from their petition that the Chrysler Van was unreasonably dangerous because it "failed to conform to express [] warranty" under the LPLA.[67]

Because Plaintiffs have not "identif[ied] specific evidence in the record" to create a genuine dispute as to the existence of any "express warranty made at any time by the manufacturer," as required by Louisiana Revised Statutes § 9:2800.58,[68] FCA is entitled to summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due to nonconformity with an express warranty. [69]

## IV.   Summary judgment will be denied on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due its defective design.

---

[63] La. R.S. 9:2800.53(6).
[64] *Reynolds v. Bordelon*, 2014-2371, at p. 11 (La. 6/30/15), 172 So. 3d 607, 615 (emphasis added).
[65] R. Doc. 53.
[66] *See* R. Doc. 62.
[67] *See id.* at p. 9.
[68] La. R.S. § 9:2800.58.
[69] *See Rogas*, 136 F.3d at 458.

Under the LPLA, a product is defective in design if, at the time it left the manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.[70]

"To withstand [a] motion for summary judgment" on a design defect claim, a plaintiff must demonstrate "that safer alternative designs were in existence at the time the [product] left [the manufacturer's] control and that the risk avoided by such designs outweighed the burden of adopting the designs."[71] The first element requires the claimant prove the alternative design was "at least [] conceived at the time the product left the manufacturer's control, because one of the purposes of the first element 2800.56 is to show the manufacturer ha[d] a realistic choice as to design."[72] The second element, often referred to as the risk-utility analysis, requires a plaintiff to present evidence "concerning the extent of the risk that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of [the] proposed alternative design."[73]

"An alternative design must be reasonably specific and not based on mere speculation."[74] "Louisiana courts and federal courts interpreting Louisiana law have held that it is not possible for a jury to determine a product to be defective under the LPLA

---

[70] La. R.S. § 9:2800.56.

[71] *Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590 (5th Cir. 1994).

[72] John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 596 (1989).

[73] *Scordill v. Louisville Ladder Group, LLC*, 02-2565, 2003 WL 22427981, at *10 (E.D. La. Oct. 24, 2003).

[74] *Gray v. Indus. Plant Maint.*, 01-1167, 2004 WL 1661209, at *5 (E.D. La. July 23, 2004).

without expert testimony,"[75] and the fact finder may not "presume an unreasonably dangerous design solely from the fact that injury occurred."[76] However, "there may be cases in which the judge or the jury, while relying on background knowledge and 'common sense,' can 'fill in the gaps'" such that an expert opinion is unnecessary.[77] "[I]n order for this to be possible, the product itself, or at least the design feature in question, must be relatively uncomplicated, and the implications of the change in design must be such that a layman could readily grasp them."[78]

In this case, Plaintiffs claim alternative designs existed for both characteristics of the Chrysler Van they allege were unreasonably dangerous—the Glass Defect and the Airbag Defect.[79] Defendant FCA contends the Plaintiffs "have not presented through expert testimony an alternative design that would have prevented Plaintiffs' injuries in this case," and thus, their LPLA claims fail as a matter of law because there is no genuine dispute of material fact as to the essential element of their design defect claims.[80] Specifically, FCA points to the Batzer Report, which expresses Dr. Batzer's opinion that "alternative design of a roll-deployable curtain airbag and/or the use of laminated glass

---

[75] *Underwood*, 2015 WL 5475610, at *3 (citing *Bourgeois v. Garrard Chevrolet, Inc.*, 811 So. 2d 962, 966–67 (La. Ct. App.), *writ denied*, 816 So. 2d 854 (La. 2002) (reversing trial court's ruling and granting summary judgment in favor of defendant, holding that "plaintiff is required to present expert testimony to show a genuine issue of material fact" in LPLA action against car manufacturer regarding allegedly defective brake system); *Campbell v. Mitsubishi Motors, Inc.*, 344 F. Supp. 2d 962, 966 (W.D. La. 2004) (granting summary judgment in favor of defendant in LPLA case involving automobile airbag after finding plaintiffs' lay witness testimony insufficient to dispute expert reports and opinions provided by defendant)).

[76] *McCarthy v. Danek Meducak, Inc.*, 65 F. Supp. 2d 410, 412 (E.D. La. 1999) ("Without expert or technical evidence to support the contention that the design was defective or to establish an alternative design, [a] plaintiff [] fail[s] to create an issue of fact to be left to a jury." (citing *Ashley v. GMC*, 666 So. 2d 1320, 1322 (La. App. 2 Cir. 1996))).

[77] *Morgan*, 30 F.3d at 591.

[78] *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 184 (5th Cir. 1990).

[79] *See* R. Doc. 62 at pp. 18-21.

[80] R. Doc. 53-1 at p. 13.

would have acted as ejection mitigation devices in the crash and thus limited or prevented Plaintiffs' injuries."[81] FCA claims that Dr. Batzer admits neither alternative design "prevents full or partial ejection" and the Plaintiffs "would still have experienced injuries had those alternative designs been in place at the time of the accident."[82]

In opposition, Plaintiffs argue their burden on summary judgment is not to prove an alternative design "would have *prevented* [Plaintiffs'] ejections or injuries," as asserted by FCA.[83] Instead, Plaintiffs claim they "need only prove that the alternative designs would have *significantly reduced* the plaintiffs' damages," which they contend they "are able to meet [] with regards to both design defect claims."[84] The Court agrees that Plaintiffs need not prove an alternative design would have prevented their damages at this stage. Rather, to survive summary judgment Plaintiffs need only identify evidence in the record "concerning the extent of the risk that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of [the] proposed

---

[81] *Id.* at p. 11 (citing Batzer Rep., R. Doc. 53-4 at p. 18).

[82] *Id.* at pp. 11-12 (citing Dep. Tr. of Batzer, R. Doc. 53-5 at 64:9-14, 64:21-65:3, 111:14-112:2, 112:6-12, 124:11-19, 125:4-19). FCA also argues Dr. Batzer offers no biomechanical or injury causation testimony in this case and, accordingly, all of Plaintiffs' LPLA claims fail as a matter of law because they offer no evidence to demonstrate their injuries were proximately caused by alleged defects in the Chrysler Van. *Id.* at pp. 17-18. In opposition, Plaintiffs acknowledge Dr. Batzer is not a biomechanical engineer, but argue Dr. Batzer's testimony as to the alleged unreasonably dangerous design defects of the Chrysler Van and testimony of other fact and expert witnesses are sufficient to prove causation. R. Doc. 62 at pp. 22-25. FCA's reply clarifies that its argument on the issue of causation is based on its assertion that Dr. Batzer has "no formal degree in biomechanics nor has he held himself out as a biomechanical expert," thus Plaintiffs "have no witness to offer" an opinion on causation. R. Doc. 65 at p. 3. FCA's argument is more appropriate for a *Daubert* motion. Because the parties have not briefed the Court on Dr. Batzer's qualifications to testify as to biomechanical causation and because the Plaintiffs have otherwise identified sufficient evidence in the record to raise genuine issues of material fact as to the existence of proximate causation in this case, FCA's Motion for Summary Judgment on the issue of causation will be denied.

[83] R. Doc. 62 at p. 17 (emphasis added).

[84] *Id.* (citations omitted).

alternative design."[85]

First, Plaintiffs present as an alternative design to the alleged Airbag Defect a "rollover activated side airbag system," which was available as of the 2007 model year.[86] For support, Plaintiffs cite the Batzer Report, which explains "[r]ollover activated side curtain airbags were already standard equipment on various vehicles" "by the 2007 model year," and expresses Dr. Batzer's opinion that, "[a]s side curtain airbags are designed to mitigate injuries and retain occupants, more likely than not, there would be no partial or full ejections in the subject overturn had this vehicle been equipped with side curtain airbags."[87] Plaintiffs also cite deposition testimony of FCA's corporate representative, which indicates the rollover activated side airbag system "was launched in [the] 2006 model year" and would have cost $31 per vehicle to install in a vehicle already equipped with the base side airbag system.[88] While Plaintiffs acknowledge Dr. Batzer's testimony indicated "there was still a risk of partial ejection[] if the [Chrysler Van] had been equipped with side curtain airbags," they point to other portions of his deposition that reveal his opinions that if the Chrysler Van were equipped with rollover activated side curtain airbags, "more likely than not the airbags would have kept Ms. Washington's arm inside the vehicle,"[89] thereby significantly reducing the injuries she and Ms. Summers sustained.[90]

Second, Plaintiffs allege the Chrysler Van was unreasonably dangerous because the

---

[85] *Scordill*, 2003 WL 22427981, at *10.
[86] R. Doc. 62 at p. 18.
[87] Batzer Rep., R. Doc. 53-4 at p. 18.
[88] R. Doc. 62 at p. 18 (citing Dep. Tr. of Lisa Fodale, R. Doc. 62-9 at 14:4-8, 18-20).
[89] *Id.* at p. 19 (citing Dep. Tr. of Batzer, R. Doc. 53-5 at 63:6-11).
[90] *See id.* at p. 20.

side windows were composed of tempered glass instead of laminated glass, which Plaintiffs claim was available as of the 2007 model year.[91] For support, Plaintiffs cite the Batzer Report, which explains "laminated glass was used in the windshield" of the Chrysler Van, demonstrating the technology existed at the time the product left the manufacturer, and that the cost of installing laminated glass would have been "an additional $25 per window or less over the cost of tempered."[92] Plaintiffs further identify portions of the Batzer Report,[93] Dr. Batzer's deposition testimony,[94] and deposition testimony of FCA expert Dr. Michael Carhart,[95] which they argue raise a genuine issue as to whether "the installation of laminated glass in the side windows in [the Chrysler Van] would have significantly reduced Plaintiffs' injuries."[96] Specifically, Dr. Batzer "testified that the use of laminated glass would be better at restraining and preventing ejection from a vehicle," which is the purported mechanism of both Plaintiffs' injuries.[97]

The Court finds Plaintiffs sufficiently identify evidence in the record concerning the extent of the risk the alternative designs would have avoided and FCA's financial burden of switching to the alternative designs. Because the Plaintiffs raise genuine disputes as to whether feasible alternative designs existed for both characteristics of the Chrysler Van that they allege were unreasonably dangerous, FCA has not met its burden of showing there are no material facts in dispute. Accordingly, FCA's Motion for Summary Judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under

---

[91] *Id.* at pp. 20-21.
[92] *Id.* at p. 21 (citing Batzer Rep., R. Doc. 53-4 at pp. 11, 18).
[93] Batzer Rep., R. Doc. 53-4 at pp. 12, 17.
[94] Dep. Tr. of Batzer, R. Doc. 53-5 at pp. 198-200.
[95] Dep. Tr. of Michael Carhart, R. Doc. 62-2 at 23:20-25, 54:1-13.
[96] R. Doc. 62 at p. 21.
[97] Dep. Tr. of Batzer, R. Doc. 53-5 at pp. 60, 101-02; *see also* Batzer Rep., R. Doc. 53-4 at pp. 14, 18.

the LPLA due to its defective design will be denied.

**V.    FCA is entitled to summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due to inadequate warning.**

Under the LPLA, a product is unreasonably dangerous due to inadequate warning "if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product."[98] "[E]ven when a product is not defective, a manufacturer may have a duty to instruct reasonably foreseeable users of the product's safe use."[99] However, no warning is necessary when "(1) [t]he product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristic; or (2) [t]he user or handler already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic."[100]

When assessing whether a manufacturer has a duty to warn, courts apply a similar risk-utility analysis to that used to determine a manufacturer's liability for claims of design defect.[101] As expressed by the Fifth Circuit:

> A court must first determine what risk, if any, the product created. A court must then determine whether a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. In applying the risk-utility analysis, we have said that a plaintiff

---

[98] La. R.S. § 9:2800.57(A).
[99] *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000).
[100] La. R.S. § 9:2800.57(B).
[101] *Krummel*, 206 F.3d at 551.

must show evidence 'concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design.'[102]

While a plaintiff need not, "in every case, introduce evidence that details and quantifies the risk avoided and the burden incurred in order to prevail," "'a mere allegation of inadequacy' is insufficient" for an LPLA claim premised on inadequate warning to survive summary judgment.[103] Indeed, "[a] plaintiff must offer *some* evidence of the warning that should have been given and how such a warning would have prevented the injury."[104]

Defendant FCA argues Plaintiffs' inadequate warning claims fail as a matter of law because Plaintiffs offer no expert testimony regarding warning defects and "do not provide an alternative, adequate warning that would have prevented the alleged injuries in order to carry the burden of proof" for those claims under the LPLA.[105] Further, FCA points to deposition testimony of Plaintiffs' only design expert, Dr. Batzer, who concedes he does not opine as to any claim of defect based on inadequate warning and Plaintiffs have not disclosed any other expert to offer testimony as to defects in the Chrysler Van.[106]

In opposition, the Plaintiffs acknowledge they offer no expert testimony on the

---

[102] *Id.* at 551-52 (internal citations omitted).

[103] *McFarlin v. N.H. Ins. Co.*, 2016 WL 3645200, at *7 (W.D. La. June 30, 2016) (quoting *Broussard v. Procter & Gamble Co.*, 463 F. Supp. 2d 596, 609 (W.D. La. 2006)).

[104] *Id.* (emphasis added); *Bruno v. Biomet, Inc.*, 20-2706, 2023 WL 8355438, at *5 (E.D. La. Dec. 1, 2023) ("[A] plaintiff must identify what warning was inadequate and propose an alternative adequate warning."). *See also Krummel*, 206 F.3d 548 (reversing judgment and dismissing failure to warn claim when plaintiff failed to introduce evidence as to the frequency of accidents caused by the allegedly dangerous quality of the product); *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 205 (5th Cir. 2001) (affirming dismissal of failure to warn claim when plaintiff presented no evidence about the cause, frequency, severity, or consequences of the allegedly dangerous quality of the product); *Stahl*, 283 F.3d at 264 ("[A] plaintiff must provide evidence about the 'cause, frequency, severity, or consequences' of the dangerous characteristic in question." (quoting *Grenier*, 243 F.3d at 243)).

[105] R. Doc. 53-1 at p. 11; R. Doc. 65 at p. 8.

[106] R. Doc. 53-1 at p. 11 (citing Dep. Tr. of Batzer, R. Doc. 53-5 at 24:11-18).

alleged inadequate warning defects, but argue their LPLA claims based on inadequate warning are viable because Dr. Batzer's "expert report and testimony regarding the use of tempered glass in the side windows and the lack of side curtain airbags is sufficient to allow a judge or jury to conclude that warnings should have been provided and such warnings would have significantly reduced Plaintiffs' injuries."[107] Plaintiffs concede that Louisiana law requires a claimant to "provide evidence about the 'cause, frequency, severity or consequences'" of an allegedly inadequate warning, as well as "evidence of an adequate warning[,] which if provided 'would lead an ordinary reasonable user or handler of a product to contemplate the danger in using of handling the product in such a manner as to avoid the danger for which the claim was made.'"[108] However, Plaintiffs do not identify any evidence in the record to support those elements of their inadequate warning claims. Plaintiffs point only to the Chrysler Van sales brochure and owner's manual, which are devoid of any warning "of the dangers imposed by not having side curtain airbags in the second and third rows" or "by using tempered glass in the side windows."[109]

Courts applying the LPLA routinely dismiss inadequate warning claims when the claimant does not "present any language of a proposed adequate warning,"[110] "ma[kes] no showing that they have expert testimony to prove their inadequate warning claim, with respect to the frequency of accidents," "the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on

---

[107] R. Doc. 62 at pp. 27-28.

[108] *Id.* at p. 26 (first quoting *Stahl*, 283 F.3d at 264; then quoting La. R.S. § 9:2800.53(9)).

[109] *Id.* at p. 27 (first citing Chrysler Van Sales Brochure, R. Doc. 62-11; then citing Chrysler Van Owner's Manual, R. Doc. 62-12).

[110] *Thompson v. Nissan North America, Inc.*, 429 F. Supp. 2d 759, 781 (E.D. La. 2006) [hereinafter *Thompson* I].

the use of an alternative warning,"[111] or otherwise fail to "provide any evidence to support th[e] claim."[112] The Court finds Plaintiffs in this case have not "identif[ied] specific evidence in the record" of "a proposed adequate warning,"[113] nor have they identified expert testimony that opines on "the frequency of accidents," "the economic costs" of those accidents, or the extent an alternative warning would reduce the frequency of those accidents,"[114] as necessary to prove the Chrysler Van was unreasonably dangerous due to inadequate warning. The only evidence Plaintiffs identify is the absence of any warning related to the Glass and Airbag Defects in the Chrysler Van sales brochure and owner's manual,[115] neither of which raise a genuine dispute as to the material facts necessary to prove their inadequate warning claims. Accordingly, FCA is entitled to summary judgment on Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due to inadequate warning.[116]

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that FCA's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.[117]

**IT IS FURTHER ORDERED** that FCA's Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs' negligence claims against FCA

**IT IS FURTHER ORDERED** that FCA's Motion for Summary Judgment is

---

[111] *Thompson v. Nissan North America, Inc.*, 2006 WL 8455868, at *6 (E.D. La. May 25, 2006) [hereinafter *Thompson* II] (denying motion to reconsider dismissal of inadequate warning claim).
[112] *Reynolds*, 172 So. 3d at 614.
[113] *Thompson* I, 429 F. Supp. 2d at 781.
[114] *Thompson* II, 2006 WL 8455868, at *6.
[115] *See* Chrysler Van Sales Brochure, R. Doc. 62-11; Chrysler Van Owner's Manual, R. Doc. 62-12.
[116] *See Rogas*, 136 F.3d at 458.
[117] R. Doc. 53.

**GRANTED** with respect to Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA because of defect in construction and composition (i.e., manufacturing defect), inadequate warning, and nonconformity with an express or implied warranty.

**IT IS FURTHER ORDERED** that FCA's Motion for Summary Judgment is **DENIED** with respect to Plaintiffs' claims that the Chrysler Van was unreasonably dangerous under the LPLA due to its defective design.

**New Orleans, Louisiana, on this 23rd day of August, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**